IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ARDON VISUAL COMMUNICATIONS CORP,<br><br>*Plaintiff,*<br><br>v.<br><br>125 DEVELOPMENT NH CORP, COLEMAN MCDONOUGH, INDIVIDUALLY AND AS MANAGER OF 125 DEVELOPMENT NH CORP, AND JENNIFER MCDONOUGH, INDIVIDUALLY,<br><br>*Defendants.* | Case No.  1:25-cv-00104-SE<br><br>**JURY TRIAL DEMANDED** |

### AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Ardon Visual Communications Corp ("Ardon"), by and through its attorneys, Kenney & Sams, PLLC, hereby submits its Amended[1] Complaint and Demand for Jury Trial as follows:

### I. INTRODUCTION

1. This action arises from a fraudulently obtained lease that was intended to provide commercial space for Ardon starting January 1, 2025. Defendants employed unfair and deceptive business practices and made knowing misrepresentations regarding the suitability of the space for Ardon's business to induce Ardon to enter the lease, when in fact Defendants had not obtained proper permits for building and occupancy and

---

[1] Ardon files this Amended Complaint as a matter of course and pursuant to Fed. R. Civ. P. 15(a)(1)(B), solely to update its location, which has changed since the filing of the original Complaint (see ¶2).

were unable to deliver the premises, leaving Ardon without a home for its business. Ardon now brings this Complaint for fraud, negligent misrepresentation, unjust enrichment, and violations of N.H. Rev. Stat. § 358-A for unfair and deceptive acts or practices in the conduct of trade or commerce.

## II. PARTIES

2. Plaintiff Ardon is a corporation formed and organized under the laws of Massachusetts with a principal place of business in Agua Dulce, California.

3. Defendant 125 Development NH Corp ("125 Development") is a New Hampshire corporation with a principal place of business in Plaistow, New Hampshire.

4. Defendant Coleman McDonough ("Mr. McDonough") is a natural person and resident of New Hampshire.

5. Defendant Jennifer McDonough ("Ms. McDonough," and, collectively with 125 Development and Mr. McDonough, "Defendants") is a natural person and resident of New Hampshire.

## III. JURISDICTION

6. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332.

7. This Court has jurisdiction over the Defendants in this matter because: (1) Defendants committed tortious acts within the State of New Hampshire; (2) the Defendants transact business in the State of New Hampshire; and (3) the claims made in this action arose out of acts, omissions, and conduct of the Defendants occurring in the State of New Hampshire.

8. Venue is proper before this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV. **FACTS**

9. Ardon is in the business of designing, manufacturing, and installing custom signage, medium to large scale branding, exhibits, and event projects.

10. To operate its business, Ardon requires use of space that has permits for commercial use specific to its needs.

11. As of October 11, 2024, Ardon's main headquarters and production facilities were located in Everett, Massachusetts.

12. On or around October 11, 2024, Ardon's CEO Taylor Campbell contacted Mr. McDonough regarding a potential move of Ardon's headquarters and production facilities to a new 6,265 square foot premises owned by 125 Development located in Newton, New Hampshire and identified as "Phase 2, Building #1, Unit #1" (the "Premises").

13. Mr. Campbell and other Ardon employees spoke with Mr. McDonough about Ardon's interest in leasing the Premises and described the nature of Ardon's business.

14. Mr. Campbell also spoke with Mr. McDonough about Ardon's needs for additional build out of the space for company needs.

15. Mr. Campbell informed Defendants that Ardon would pay for its own contractors to perform the necessary build out rather than use Defendants' General Contractor, Thomas Lekborg.

16. Based on those conversation, Defendants knew that Ardon required the Premises to have permitting from all local authorities that would allow for the operation of Ardon's business at the commencement of the lease term.

17. During the course of lease negotiations in October, November and December 2024, Defendants told Mr. Campbell on multiple occasions that the Premises were well-suited for Ardon's needs.

18. On October 17, 2024, following a visit by Ardon's representative to the site, Mr. Campbell spoke with Mr. Lekborg, who provided assurances that proper permits had been secured and a certificate of occupancy would be signed within a week.

19. Throughout October and November, 2024, Mr. Campbell made repeated requests to Mr. McDonough and Ms. McDonough for lease terms and clarification on timelines for project completion and additional buildout.

20. At an in-person meeting in November, 2024, Mr. McDonough and Mr. Lekborg assured Mr. Campbell that the space, including all necessary permits, would be completed by the end of December, 2024.

21. In reality, at the time of that meeting, significant work remained to be done, including electrical and fire alarm connections.

22. More significantly, Defendants knew that they had never obtained a building permit for the Premises and that they had been in non-compliance with building regulations for the Town of Newton since at least March, 2023.

23. Despite knowing that they lacked proper permitting and that significant work was required to complete the Premises, both Mr. McDonough and Ms. McDonough pressured Ardon to sign a lease, claiming that they had other interested parties for the Premises.

24. On or about December 5, 2024, due to a fear of losing the opportunity and relying on Defendants' promises regarding the suitability of the Premises and it being ready by the end of December, 2024, Ardon executed a Lease with 125 Development for occupation and use of the Premises (the "Lease"). A copy of the Lease is attached as Exhibit 1.

25. The Lease provided for Ardon to hold the Premises for a term of three years beginning on January 1, 2025.

26. As a condition of the Lease and to secure its right to occupy the Premises, Ardon made payment to 125 Development of $16,618.04, representing the first and last months' rent for the Premises, on or about December 9, 2024 (the "Security Deposit").

27. After signing the Lease and in preparation for moving Ardon's business, Mr. Campbell made multiple requests for an address for the Premisess to Mr. Coleman, Ms. Coleman, and Mr. Lekborg to facilitate insurance and operational arrangements, including transfer of utilities.

28. Mr. Coleman, Ms. Coleman, and Mr. Lekborg were unable to provide that information, shifting responsibility among each other and blaming delays on the Town of Newton.

29. Having received no information from Defendants, Mr. Campbell then contacted the Town of Newton directly on December 16, 2024, and was informed for the first time that Defendants lacked proper permitting for the Premises and had been in non-compliance since March, 2023.

30. Also on December 16, 2024, Mr. Campbell called and emailed Mr. Coleman and Ms. Coleman seeking immediate clarification regarding the status of permits, the certificate of occcupany, and the feasibility of delivering the Premises by January 1, 2025 as required by the Lease.

31. Mr. Campbell made multiple attempts to contact Mr. Coleman and Ms. Coleman for that information and demanded a written reply, but his requests were ignored and he has not received any further communication from Mr. Coleman or Ms. Coleman to this date.

32. Unbeknownst to Ardon, Defendants had not received a Building Permit from the Town of Newton prior to construction of the building in which the Premises were to be located, and the building was built without proper authorization.

33. Defendants knew prior to December 5, 2024 that 125 Development had not obtained a Building Permit for the Premises.

34. Defendants knew as of December 5, 2024 that 125 Development would be unable to deliver the Premises to Ardon on January 1, 2025.

35. The Building Permit was necessary for 125 Development to obtain a Certificate of Occupancy for the Premises.

36. A Certificate of Occupancy is required before Ardon can occupy and use the Premises.

37. Without a Building Permit in place prior to construction, the Premises were never allowed to be built and were unable to be assigned an address by the Town of Newton.

38. Ardon would not have been allowed to obtain a commercial operation license for its use of the Premises without a Building Permit or Certificate of Occupancy.

39. Due to Defendants' failure to obtain the necessary permits and authorizations, Defendants failed to deliver possession of the Premises to Ardon on January 1, 2025, in breach of the Lease.

40. Because the Premises could not be occupied or used by Ardon, the purpose of the Lease was defeated and Defendants were in material breach.

41. In reliance on Defendants' false representations regarding the suitability of the Premises and a justified expectation that it would be able to move its business to the Premises on January 1, 2025, Ardon had terminated its lease in Everett, Massachusetts effective December 31, 2024.

42. Ardon thus had no home for its business and no place to manufacture and fulfill client contracts starting January 1, 2025.

43. Ardon has searched diligently for a suitable alternative location to operate its business in New Hampshire and elsewhere since learning that the Premises were not properly permitted and would not be available on January 1, 2025.

44. Despite Ardon's best efforts, it has been unable to secure a new home for its business as of the date of this complaint, and is losing revenue and profit for each day it is unable to serve its customers.

45. Ardon has also incurred significant expenses for moving, travel, and disconnecting and reconnecting machinery because of Defendants' failure to deliver the Premises as required.

46. On January 2, 2025, counsel for Ardon sent a letter to Defendants providing Notice of Breach, terminating the Lease, and demanding refund of the Security Deposit, as well as reimbursement for Ardon's costs to secure new premises, payment for lost profits caused by being unable to operate until a new location is secured, and payment of attorney's fees related to this matter, as required by Paragraph 38 of the Lease. A copy of that letter is attached as Exhibit 2.

47. 125 Development appeared before the Town of Newton Planning Board (the "Planning Board") on January 14, 2025 and represented its intent to apply for building permits, occupancy permits and a change of use permit for the Premises.

48. On or around January 15, 2025 Mr. Coleman submitted an application to the Planning Board for a Change of Use Request in Ardon's name.

49. Ardon did not authorize Mr. Coleman to make an application in its name, and informed the Planning Board by email on January 16, 2025 that it did not authorize the Change of Use Request.

50. On January 24, 2025, counsel for 125 Development sent a letter to counsel for Ardon stating, among other things, that 125 Development would only agree to refund Ardon's Security Deposit and release Ardon from the lease if Ardon agreed to mutual releases and waived its rights to lost profits and other damages. A copy of that letter is attached as Exhibit 3.

51. In that January 24, 2025 letter, counsel for 125 Development also informed Ardon of its intent to obtain Building Permits and Occupancy Permits needed for occupancy of the Premises, and stated that they would be appearing before the Planning Board to obtain a Change of Use Permit to allow Ardon to occupy the Premises the following week.

52. On January 27, 2025, counsel for Ardon informed counsel for 125 Development that Ardon does not consent to any representation to the Planning Board on its behalf.

53. On January 28, 2025, 125 Development withdrew its application for Change of Use before the Planning Board.

54. On January 31, 2025, counsel for 125 Development sent a letter to counsel for Ardon and stated that Ardon's "withdrawal of authority" for the Change of Use Permit constituted a breach of the Lease and that 125 Development was electing to terminate the Lease. A copy of that letter is attached as Exhibit 4.

55. In that letter, counsel for 125 Development stated that Ardon would only return the Security Deposit after securing a replacement tenant, and that Ardon would be held responsible for rental amounts due under the lease until a Replacement Tenant was found, as well any deficiency if the replacement lease was on less favorable terms than Ardon's Lease.

56. Ardon had previously terminated the Lease by its letter on January 2, 2025 and had never provided authorization for Defendants to apply for a Change of Use on its behalf.

57. The terms of the Lease cited by counsel for 125 Development are not binding on Ardon because the Lease was procured by fraud.

58. As of the date of this Complaint, the Premises do not have proper permitting and could not be occupied by Ardon or any other commercial tenant.

59. As of the date of this Complaint, Defendants have not advertised the Premises for rent to other parties.

## CAUSES OF ACTION

### COUNT I
### FRAUD (AS TO COLEMAN MCDONOUGH AND JENNIFER MCDONOUGH)

60. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

61. Mr. McDonough and Ms. McDonough knew that the Premises did not have proper permitting and would not be available for Ardon's intended use on January 1, 2025.

62. Mr. McDonough and Ms. McDonough intentionally made false and misleading statements to Ardon about the suitability of the Premises for Ardon's business.

63. Mr. McDonough and Ms. McDonough intentionally made false and misleading statements to Ardon that the Premises would be ready for Ardon's occupancy by January 1, 2025.

64. Mr. McDonough and Ms. McDonough made those false and misleading statements to induce Ardon to enter a Lease and pay a Security Deposit.

65. Mr. McDonough and Ms. McDonough knew that Ardon would not have entered the Lease or paid the Security Deposit had it been informed that the Premises did not have proper permits and would not be available for Ardon's use on January 1, 2025.

66. Ardon had no reason to believe that Mr. McDonough and Ms. McDonough were not being truthful prior to signing the Lease.

67. Ardon reasonably relied on false and misleading statements by Mr. McDonough and Ms. McDonough when signing the Lease.

68. As a result of Mr. McDonough and Ms. McDonough's fraudulent conduct, as described above, Ardon has sustained monetary damages in an amount to be detemined at trial for which Mr. McDonough and Ms. McDonough are liable.

## COUNT II
## NEGLIGENT MISREPRESENTATION (AS TO COLEMAN MCDONOUGH AND JENNIFER MCDONOUGH)

69. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

70. Mr. McDonough and Ms. McDonough knew that the Premises did not have proper permitting and would not be available for Ardon's intended use on January 1, 2025.

71. Mr. McDonough and Ms. McDonough owed Ardon a duty of care to provide truthful information regarding information that was material to Ardon's decision to lease the Premises.

72. Mr. McDonough and Ms. McDonough negligently made false and misleading statements to Ardon about the suitability of the Premises for Ardon's business.

73. Mr. McDonough and Ms. McDonough negligently made false and misleading statements to Ardon that the Premises would be ready for Ardon's occupancy by January 1, 2025.

74. Mr. McDonough and Ms. McDonough made those false and misleading statements to induce Ardon to enter a Lease and pay a Security Deposit.

75. Mr. McDonough and Ms. McDonough knew that Ardon would not have entered the Lease or paid the Security Deposit had it been informed that the Premises did not have proper permits and would not be available for Ardon's use on January 1, 2025.

76. Ardon had no reason to believe that Mr. McDonough and Ms. McDonough were not being truthful prior to signing the Lease.

77. Ardon reasonably relied on false and misleading statements by Mr. McDonough and Ms. McDonough when signing the Lease.

78. As a result of Mr. McDonough and Ms. McDonough's negligent misrepresentations, as described above, Ardon has sustained monetary damages in an amount to be detemined at trial for which Mr. McDonough and Ms. McDonough are liable.

COUNT III
UNJUST ENRICHMENT (AS TO 125 DEVELOPMENT)

79. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

80. 125 Development received a Security Deposit of $16,618.04 from Ardon, which was paid to secure Ardon's right to occupy the Premises on January 1, 2025.

81. 125 Development failed to deliver the Premises to Ardon on January 1, 2025.

82. Ardon demanded return of the Security Deposit due to the fact that the Premises were not delivered on January 1, 2025.

83. 125 Development has refused to return the Security Deposit.

84. 125 Development unjustly retained the Security Deposit at the expense of Ardon. As a result, Ardon has suffered damages.

## COUNT IV
## VIOLATIONS OF N.H. Rev. Stat. § 358-A (AS TO ALL DEFENDANTS)

85. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

86. Defendants are engaged in trade or commerce in New Hampshire.

87. Defendants have violated N.H. Rev. Stat. § 358-A by making false and deceptive representations in connection with the Lease of the Premises.

88. Ardon has suffered damages as a result of Defendants' violations of N.H. Rev. Stat. § 358-A.

## COUNT V
## RECISSION (AS TO 125 DEVELOPMENT)

89. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

90. As stated herein, 125 Development, through its agents Mr. McDonough and Ms. McDonough, made material misrepresentations that were knowingly fale to Ardon to induce it to enter into the Lease.

91. As a direct and proximate result of 125 Development's material misrepresentations to Ardon that were knowingly false, Ardon is entitled to rescind the lease.

## COUNT VI
## BREACH OF CONTRACT (AS TO 125 DEVELOPMENT)

92. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

93. By the conduct described above, 125 Development breached the terms of the Lease with Ardon.

94. 125 Development breached the Lease by, among other things, failing to deliver the Premises on January 1, 2025 and failing to refund Ardon's Security Deposit on demand.

95. Ardon has been damaged by 125 Development's breach of the Lease in an amount to be determined at trial.

## COUNT VII
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AS TO 125 DEVELOPMENT)

96. Ardon hereby repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

97. By the conduct described above, 125 Development, acting through Mr. McDonough and Ms. McDonough, has breached the implied covenant of good faith and fair dealing contained in the Lease.

98. 125 Development's failure to disclose that it lacked permission to build the Premises and would be unable to tender the Premises to Ardon on January 1, 2025 violated the implied covenant of good faith and fair dealing and deprived Ardon of any benefit of its bargain in order to financially benefit 125 Development.

99. 125 Development's failure to deliver the Premises to Ardon on January 1, 2025 and subsequent refusal to return Ardon's Security Deposit also violated the Lease and the implied covenant of good faith and fair dealing.

100. Ardon has been damaged in an amount to be determined at trial by 125 Development's breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Enter judgment in favor of the Plaintiff and against the Defendants on all counts of the Complaint;

b. Award Plaintiff its attorneys' fees pursuant to N.H. Rev. Stat. § 358-A and/or the terms of the Lease;

c. Award Plaintiff treble its damages on Count IV of the Complaint for Defendants' willful or knowing deceptive acts or practices; and

d. Award Plaintiff such other relief as is just and equitable.

## **JURY DEMAND**

The Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

ARDON VISUAL COMMUNICATIONS CORP

By their attorney,

_____
J. Nathan Cole, Esq.
jncole@kslegal.com
M. Matthew Madden, Esq.
mmmadden@KSlegal.com
KENNEY & SAMS, PLLC
Reservoir Nine
144 Turnpike Road, Suite 350
Southborough, MA 01772
Tel.  508-490-8500

Dated: June 2, 2025                                                              Fax:  508-490-8501